UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
ROBERT ENGLISH,

                              Plaintiff,          <u>MEMORANDUM & ORDER</u>
                                                  12-CV-4179(JS)(AYS)

          -against-

LARRY LATTANZI, as personal
representative of the Estate of
BARBARA A. LATTANZI,

                              Defendant.
----------------------------------------X
APPEARANCES
For Plaintiff:      Thomas P. Mohen, Esq.
                    Jonathan Mark Cader, Esq.
                    Jonathan Temchin, Esq.
                    Mark E. Spund, Esq.
                    Davidoff Hutcher & Citron
                    200 Garden City Plaza, Suite 315
                    Garden City, NY 11530

For Defendant:      Kenneth J. DeMoura, Esq.
                    DeMoura Smith LLP
                    One International Place, 14th Floor
                    Boston, MA 02110


SEYBERT, District Judge:

          On  August  21,  2012,  Plaintiff  Robert  English
("Plaintiff"), a retired investor, brought this action for fraud,
conversion, and breach of fiduciary duty.  Plaintiff claims his
longtime employee, Barbara Lattanzi ("Lattanzi"), stole money from
him for years.  After Lattanzi's death on March 3, 2014,[1] Larry
Lattanzi ("Defendant"), was substituted as the Defendant in his
wife's place.  Defendant maintains that Lattanzi received the money

---

[1] (See Suggestion of Death, Docket Entry 43.)

as compensation for her services.  The parties have filed cross-motions for summary judgment. (Docket Entries 57, 58.)  For the foregoing reasons, both motions are DENIED.

BACKGROUND[2]

Plaintiff was formerly a partner at the investment management firm of Neuberger Berman.  (Def.'s 56.1 Stmt., Docket Entry 27-1, ¶ 1.)  In 1993, he formed Jasper's Fund, Inc. ("Jaspers Inc." or "the Company") to manage certain investment funds he created ("the Jasper Funds").  (English Decl., Docket Entry 57-1, ¶ 2.)  At all relevant times, Plaintiff was that sole shareholder and sole director of Jaspers Inc.  (Def.'s 56.1 Stmt. ¶¶ 12, 13, 30.)

Lattanzi[3] was introduced to Plaintiff by Larry Zicklin, the Managing Partner of Neuberger Berman.  (Def.'s 56.1 Stmt. ¶ 3.)  Plaintiff initially hired her as a consultant in 1993 to assist with the formation of the Jasper Funds--making introductions to auditors and law firms, and helping with "whatever else was necessary."  (Def.'s 56.1 Stmt. ¶¶ 5, 7; English Dep., Docket Entry 58-4, at 31:10-13; English Decl. ¶ 4.)  Six months to a year later,

---

[2] The following facts are drawn from the parties 56.1 statements and their affidavits and other evidence in support.

[3] Lattanzi used the name "Barbara Murphy," as her professional name, although Plaintiff was aware that her married name was "Barbara Lattanzi."  (Def.'s 56.1 Stmt. ¶ 8.)

Plaintiff hired Lattanzi as a part-time employee of Jaspers Inc.[4] (English Decl. ¶ 5.) Although no written agreement memorialized the terms of Lattanzi's employment, it was understood that "anything that was going to be done or needed to be done [at Jaspers Inc.], [Lattanzi] was going to handle." (Lattanzi Dep., Docket Entry 38-6 at 72:5-18.) During her employment, Lattanzi's responsibilities expanded to include placing orders for securities with traders, preparing quarterly performance letters for investors, and evaluating brokerage firms to handle the Company's accounts. (Def.'s 56.1 Stmt. ¶¶ 23-25.) Lattanzi estimated that the Jasper Funds were worth approximately ten million dollars during the early years of their operation, but they appreciated to a high point of almost $100 million. (Lattanzi Dep. 94:5-22, 95:16-24.)

On January 2, 1998, Plaintiff appointed Lattanzi as the Secretary and Treasurer of both Jaspers Inc. and the various Jasper Funds. (Def.'s 56.1 Stmt. ¶¶ 27-29.) "As Secretary and Treasurer, Lattanzi had access to all of Jaspers, Inc.'s accounts and authority to transfer funds" between them. (English Decl. ¶ 7.) On May 19, 2008 Plaintiff also consented to a banking resolution that allowed Lattanzi to endorse checks and make withdrawals or

---

[4] With the exception of Anthony Bune, the Managing director of Jaspers Inc. from September 18, 1998 until May 1, 2002, Lattanzi was the sole Employee of Jaspers Inc. (Def.'s 56.1 Stmt. ¶ 15; Pl.'s 56.1 Counterstmt., Docket Entry 27-2 ¶ 15.)

transfers on behalf of Jasper Inc. (Def.'s 56.1 Stmt. ¶ 30.) Over
the years, Plaintiff developed great trust in Lattanzi and her
duties expanded to include personal administrative services for
Plaintiff's family. (English Decl. ¶ 6.) Lattanzi testified that
she began "working for [Plaintiff] on a personal basis" and that
her work for Jaspers Inc. got "kind of mixed together" with her
work directly for Plaintiff. (Lattanzi Dep. 105:3-9.) Lattanzi
would make travel arrangements for Plaintiff's family, was
authorized to wire funds from Plaintiff's personal investment
account to his personal bank account to meet expenses, and worked
with Plaintiff's accountant to prepare his tax returns. (English
Decl. ¶ 6.) It is unclear, however, whether Lattanzi had authority
to transfer monies between Plaintiff's personal account and
Jaspers Inc.'s accounts. Plaintiff claims that Lattanzi was
authorized to transfer funds from Plaintiff's personal brokerage
account at Chase Bank in the amount of $50,000 per month, but was
not authorized to transfer funds from Plaintiff's personal account
to Jaspers Inc.'s account. (Pl.'s 56.1 Counterstmt. ¶ 52; English
Dep. 111:7-10.) But Lattanzi testified during her deposition that
she was authorized to "transfer money from [Plaintiff's] personal
account into the Jaspers entities." (Lattanzi Dep. 249:3-6.)

Lattanzi and Plaintiff both agreed during discovery that
when Lattanzi was hired, she was paid approximately $3000 a month,

or $36,000 annually.[5]  (English Dep. 43:12-18, 34:1-16.)  Plaintiff claims that, in addition to her annual $36,000 base salary, Lattanzi was paid a one-time bonus of $200,000 in the year 2000, "due to the extremely favorable performance returns by the Jaspers Funds in that year."[6]  (English Dep. 41:24-42:24; English Decl. ¶ 10.)  Plaintiff claims that "[a]t no other time was Lattanzi paid any bonus, loaned any money, given any salary increase, or granted any advance on her salary from Jaspers, Inc." (English Decl. ¶ 11.)  Lattanzi testified, however, that her annual salary increased dramatically during her time as an employee of Jaspers Inc.  Although she did not "remember the exact numbers," or when her compensation changed, she testified that her compensation increased to over $200,000 annually, and later reached a peak of $300,000 to $350,000 annually.  Lattanzi also testified that she was paid bonuses, given salary advances, and in "one year [Plaintiff] paid [her] half a million dollars" as a bonus. (Lattanzi Dep. 127:16-128:15, 129:1-4, 132:7-12.)  According to

_____

[5] Her annual salary of $36,000 was to be paid from the Jaspers, Inc. account, which received monthly management fees from the Jaspers Funds. (English Decl. ¶ 8.)

[6] In addition, Plaintiff also loaned her $410,000 in September 1999 to purchase a condominium in Nantucket.  (Def.'s 56.1 Stmt. 46:22-47:4; English Decl. ¶ 9.)  Lattanzi subsequently repaid the loan.  (English Decl. ¶ 9.)

Lattanzi, her compensation varied based upon the "[p]erformance of the fund," among other factors.[7]  (Lattanzi Dep. 128:22-129:4.)

In September 2011, Plaintiff was contacted by agents from the U.S. Treasury Department.  The agents advised Plaintiff that they were investigating Lattanzi because "their records showed she [ ] received substantial payments from Jaspers Inc., and [ ] did not pay taxes on those monies." (English Decl. ¶ 13.) After reviewing the records, Plaintiff concluded that, from 2003 to 2011, Lattanzi made unauthorized transfers totaling $4,077,288.21 from his personal investment account into Jaspers Inc.'s account. (English Decl. ¶ 16, Ex. C, D.)  Plaintiff claims that Lattanzi paid herself $2,764,581.21 in "salary" and $1,171,645.92 in "salary advances." (English Decl. ¶ 16.)  Before he was contacted by the U.S. Treasury agents, Plaintiff believed Lattanzi was a part-time assistant who was paid $36,000 a year. (English Decl. ¶ 17.)

From 2003 to 2011, Lattanzi retained bookkeepers and accountants on behalf of Jaspers Inc. to create financial statements and ledgers detailing income and expenses for the Company.  (Def.'s 56.1 Stmt. ¶ 59.)  The Company's financial statements, ledgers, and annual tax returns disclosed the payments

---

[7] When asked how her salary was determined, she testified "Bob and I would agree on it.  It was be something that would be discussed, and we would agree."  (Lattanzi Dep. 132:19-24.)

at issue made by Jaspers Inc. to Lattanzi. (Def.'s 56.1 Stmt. ¶¶ 60, 68; Pl's 56.1 Countersmt. ¶ 68.) In addition, Plaintiff was sent notices whenever funds were transferred out of his personal account. (Def.'s 56.1 Stmt. ¶ 55.) However, Plaintiff never reviewed the ledgers or financial statements, and it is uncertain whether he ever reviewed the Company's tax returns. (Pl's 56.1 Countersmt. ¶ 67.)

In 2013, following discovery in this action, the parties both filed summary judgment motions. (Docket Entries 35, 38.) On March 3, 2014, Lattanzi passed away and Plaintiff filed a motion to substitute Larry Lattanzi as the defendant in the capacity as Lattanzi's personal representative. (See Mot. to Substitute, Docket Entry 49.) On February 12, 2015, the Court granted Plaintiff's motion and allowed the parties to re-file their summary judgment motions. English v. Murphy-Lattanzi, No. 12-CV-4179, 2015 WL 630248, at *6 (E.D.N.Y. Feb. 12, 2015). Both parties again moved for summary judgment and their motions are pending before the Court. (Docket Entry 57, 58.) Plaintiff argues that the evidence establishes, as a matter of law, that Lattanzi breached her fiduciary duty to Plaintiff and converted his assets. (Pl.'s Br., Docket Entry 57-22, at 1-3.) Defendant claims that factual disputes exist; that Plaintiff lacks standing to bring his claims; that all of Plaintiff's claims are barred by a Massachusetts

survival statute;[8] and that English's allegations are barred by the applicable statutes of limitations. (Def.'s Opp. Br., Docket Entry 60, at 14.; Def.'s Br., Docket Entry 58-1, at 10-12.)

DISCUSSION

The Court will first address the applicable legal standard on a motion for summary judgment before turning to the parties' arguments.

## I. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary

---

[8] Defendant argues that none of Plaintiff's claims survive Lattanzi's death because they are barred by a Massachusetts survival statute, MASS. GEN. LAWS ANN. ch. 228, § 1. However, the Court already decided that Plaintiff's claims survive Lattanzi's death in its Order appointing Lattanzi's estate as the Defendant. See English 2015 WL 630248, at *2. Therefore, Defendant's argument need not be explored further.

judgment is sought." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997).

"The burden of showing the absence of any genuine dispute as to a material fact rests on the party seeking summary judgment." Id.; see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). A genuine factual issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. To defeat summary judgment, "the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Anderson, 477 U.S. at 256). "[M]ere speculation or conjecture as to the true nature of the facts" will not overcome a motion for summary judgment. Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986); see also Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986) ("Mere conclusory allegations or denials will not suffice." (citation omitted)); Weinstock, 224 F.3d at 41 ("[U]nsupported allegations do not create a material issue of fact."). "The same standard applies where, as here, the parties filed cross-motions for summary judgment . . . ." Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001) (citing Terwilliger v. Terwilliger, 206 F.3d 240, 244 (2d Cir. 2000)). Thus, even if both parties move for summary judgment and assert the absence of any genuine issues of material fact, "a district

court is not required to grant judgment as a matter of law for one side or the other." Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993). "Rather, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." Morales, 249 F.3d at 121 (citation omitted).

II. Standing

Defendant argues that English does not have standing to assert his claims for fraud, conversion, or breach of fiduciary duty because Lattanzi did not transfer monies directly from Plaintiff's account to her own account, but instead paid herself from Jaspers Inc.'s account. (Def.'s Br. at 12-14.) Defendant's argument emphasizes form over substance and must be disregarded.

Standing is a jurisdictional question that concerns "the power of the court to entertain the suit." Warth v. Seldin, 422 U.S. 490, 498, 95 S. Ct. 2197, 2205, 45 L. Ed. 2d 343 (1975). To establish standing under Article III, a plaintiff must show:

> (1) [T]hat he suffered an injury-in-fact--an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical; (2) that there was a causal connection between the injury and the conduct complained of; and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Carver v. City of New York, 621 F.3d 221, 225 (2d Cir. 2010) (ellipsis in original) (internal quotation marks omitted); Liberty

Global Logistics LLC v. U.S. Mar. Admin., No. 13-CV-0399, 2014 WL 4388587, at *3 (E.D.N.Y. Sept. 5, 2014).  A plaintiff suffers an injury-in-fact when he is injured in a "personal and individual way."  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 n.1, 112 S. Ct. 2130, 2136 n.1, 119 L. Ed. 2d 351 (1992).  Thus, whether a plaintiff has standing "depends considerably upon whether the plaintiff is himself an object of the action . . . at issue."  Id. at 561, 112 S. Ct. at 2137; Ritell v. Briarcliff Manor, 466 F. Supp. 2d 514, 519 (S.D.N.Y. 2006).  Plaintiff has standing against Lattanzi's estate because there is evidence that she may have stolen from him.  Defendant does not dispute that Lattanzi transferred millions of dollars from Plaintiff's personal brokerage account into Jasper Inc.'s account, and then transferred millions of dollars from Jasper Inc.'s account into her own account.  The parties further agree that Lattanzi's initial salary only amounted to $36,000 a year, although it is disputed whether it increased.  Plaintiff has thus alleged that he suffered a particularized injury in fact (the theft of his assets), that the injury was caused by Lattanzi (the alleged thief), and that a decision in Plaintiff's favor can redress the injury.  The mere fact that Plaintiff's money was first transferred to Jasper Inc.'s account before it landed in Plaintiff's account does not relieve Plaintiff of his standing to sue.

III. <u>Statute of Limitations</u>

Defendant argues that all of Plaintiff's claims are time-barred because this action concerns events that began in 2003, eight years before Plaintiff filed the Complaint. (Def.'s Br. at 14.) The Court will address the applicable statute of limitations for each of Plaintiff's claims.

A.  <u>Fraud</u>

Under New York law, an action alleging fraud must be commenced within six years from the date the fraud was committed, or within two years from the date the plaintiff discovered the fraud or could with reasonable diligence have discovered it, whichever is later. N.Y. C.P.L.R. § 213(8); <u>Guilbert v. Gardner</u>, 480 F.3d 140, 147-48 (2d Cir. 2007). "The burden of establishing that the fraud could not have been discovered before the two-year period before the commencement of the action rests on the plaintiff, who seeks the benefit of the exception." <u>Hillman v. City of New York</u>, 263 A.D.2d 529, 693 N.Y.S.2d 224 (2d Dep't 1999). "The inquiry as to whether a plaintiff could, with reasonable diligence, have discovered the fraud turns on whether the plaintiff was 'possessed of knowledge of facts from which [the fraud] could be reasonably inferred.'" <u>Sargiss v. Magarelli</u>, 12 N.Y.3d 527, 532, 909 N.E.2d 573, 576, 881 N.Y.S.2d 651 (2009) (quoting <u>Erbe v. Lincoln Rochester Trust Co.</u>, 3 N.Y.2d 321, 326, 144 N.E.2d 78, 80,

165 N.Y.S.2d 107 (1957)). However, because the issue of when the fraud should have been discovered is fact-intensive, involving "conflicting interpretations of perceived events," summary judgment is often "not a proper vehicle for the resolution of such a dispute." Schmidt v. McKay, 555 F.2d 30, 37 (2d Cir. 1977). Thus, "[w]here it does not conclusively appear that a plaintiff had knowledge of facts from which the fraud could reasonably be inferred, a complaint should not be dismissed on motion and the question should be left to the trier of the facts." Sargiss v. Magarelli, 12 N.Y.3d at 532, 909 N.E.2d at 576 (internal quotation marks and citation omitted). Here, whether Plaintiff's fraud claim is time-barred presents a question of fact. Defendant argues that Plaintiff should have known Lattanzi was regularly transferring large sums of money from Plaintiff's account to Jaspers Inc., and from Jaspers Inc. to herself, because: (1) Plaintiff received notices whenever funds were transferred from his personal account, and (2) because the payments were disclosed on Jaspers Inc.'s ledgers, financial statements, and tax returns. (Def.'s Opp. Br. at 12-15.) Plaintiff claims, however, that he never reviewed any of these documents and was unaware of Lattanzi's actions until he was contacted by Treasury Department agents in 2011. Since there is no direct evidence that Plaintiff ever acquired knowledge of Lattanzi's actions before 2011, it would be inappropriate to dispose of Plaintiff's fraud claim on statute of limitations

grounds at this juncture.  A jury will need to decide whether it was reasonable for Plaintiff not to regularly review the Company's records and his own bank statements, in light of Plaintiff's age and his professional relationship with Lattanzi.

    B.   <u>Breach of Fiduciary Duty</u>

       "New York law does not provide any single limitations period for breach of fiduciary duty claims."  <u>Kaufman v. Cohen</u>, 307 A.D.2d 113, 118, 760 N.Y.S.2d 157, 164 (2003) (citation omitted).  Rather, the applicable limitations period can "vary depending on the basis for liability, the type of remedy sought or the relationship of the parties."  <u>Whitney Holdings, Ltd. v. Givotovsky</u>, 988 F. Supp. 732, 741 (S.D.N.Y. 1997).  When the remedy sought for breach of fiduciary duty is equitable in nature, the six-year statute of limitations set forth in CPLR 213(1) applies.  <u>See</u> <u>Loengard v. Santa Fe Indus., Inc.</u>, 70 N.Y.2d 262, 266, 514 N.E.2d 113, 115, 519 N.Y.S.2d 801 (1987).  However, suits alleging breach of fiduciary duty, "particularly those seeking purely damages, have been construed as alleging 'injuries to property' and therefore held to come within CPLR § 214(4) which has a three year prescriptive period."  <u>Whitney Holdings</u>, 988 F. Supp. at 741 (citation omitted).  Since Plaintiff seeks to recover money damages in this lawsuit, a three year limitations period applies to Plaintiff's breach of fiduciary duty claims.

Plaintiffs argue that the statute of limitations must be tolled until 2011, while a relationship of trust and confidence exists between the parties.  A breach of fiduciary duty claim may be equitably tolled during a relationship of trust and confidence because the beneficiary of such a relationship "should be entitled to rely upon a fiduciary's skill without the necessity of interrupting a continuous relationship of trust and confidence by instituting suit.'"  Ciccone v. Hersh, 530 F. Supp. 2d 574, 579 (S.D.N.Y. 2008) aff'd, 320 F. App'x 48 (2d Cir. 2009) (quoting Golden Pac. Bancorp v. FDIC, 273 F.3d 509, 518 (2d Cir. 2001)).  Plaintiff has presented evidence that, in addition to her work for Jaspers Inc., she also performed personal tasks for Plaintiff and the line between her work for Jaspers Inc. and Plaintiff became blurred.  At this stage, the scope of the parties' fiduciary relationship remains undefined.  However, there is enough evidence that a relationship of trust and confidence existed to submit to a jury both Plaintiff's fiduciary duty claim and the question of whether equitable tolling should be permitted.

C.    Conversion

A claim for conversion in New York has a three-year statute of limitations, which begins to run "'from the date conversion takes place and not from discovery or the exercise of diligence to discover.'"  City of Syracuse v. Loomis Armored US, LLC, 900 F. Supp. 2d 274, 292 (N.D.N.Y. 2012) (quoting Vigilant

Ins. Co. of Am. v. Housing Auth._, 87 N.Y.2d 36, 44, 660 N.E.2d 1121, 1126, 637 N.Y.S.2d 342 (1995); N.Y. C.P.L.R. § 214(3); Lama v. Malik, 58 F. Supp. 3d 226, 235-36 (E.D.N.Y. 2014); In re Fischer, 308 B.R. 631, 651 (Bankr. E.D.N.Y. 2004). However, "the doctrines of equitable tolling or equitable estoppel 'may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action.'" Abbas v. Dixon, 480 F.3d 636, 642 (2d Cir. 2007) (quoting Doe v. Holy See (State of Vatican City)_, 17 A.D.3d 793, 794, 793 N.Y.S.2d 565, 567 (2d Dep't 2005). But "[t]he plaintiff bears the burden of showing that the action was brought within a reasonable period of time after the facts giving rise to the equitable tolling or equitable estoppel claim 'have ceased to be operational.'" Abbas, 480 F.3d at 642 (quoting Doe v. Holy See, 17 A.D.3d at 796, 793 N.Y.S.2d at 569. Plaintiff has presented evidence that a fiduciary relationship existed between the parties that may have prevented Plaintiff from discovering Lattanzi's conversion--though the evidence is less than conclusive. Therefore, Plaintiff will bear the burden at trial to prove that the statute of limitations for conversion should be equitably tolled.

IV. Lattanzi's Invocation of the Fifth Amendment Privilege

"'Silence is often evidence of the most persuasive character.'" LiButti v. United States, 107 F.3d 110, 124 (2d Cir.

1997) (quoting <u>U.S. ex rel. Bilokumsky v. Tod</u>, 263 U.S. 149, 153-54, 44 S. Ct. 54, 56, 68 L. Ed. 221 (1923)).  Plaintiff argues that he is entitled an adverse inference against Defendant on summary judgment because Lattanzi asserted her Fifth Amendment privilege against self-incrimination in response to various written discovery requests.  (Pl.'s Br at 14-15.)

"[T]he Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." <u>Baxter v. Palmigiano</u>, 425 U.S. 308, 318, 96 S. Ct. 1551, 1558, 47 L. Ed. 2d 810 (1976).  This rule exists because the invocation of the privilege "results in a disadvantage to opposing parties by keeping them from obtaining information they could otherwise get." <u>U.S. S.E.C. v. Suman</u>, 684 F. Supp. 2d 378, 386-87 (S.D.N.Y. 2010) <u>aff'd</u>, 421 F. App'x 86 (2d Cir. 2011).  Although in some instances, an adverse inference may be drawn against the non-moving party on summary judgment, "the inference must be weighed with other evidence in the matter in determining whether genuine issues of fact exist."  <u>Suman</u>, 684 F. Supp. 2d at 386-87; see <u>Fid. Funding of California, Inc. v. Reinhold</u>, 79 F. Supp. 2d 110, 116-17 (E.D.N.Y. 1997) ("[T]he plaintiff's motion for summary judgment must stand or fall on the merits of the evidence adduced."); <u>In re Inflight Newspapers, Inc.</u>, 423 B.R. 6, 16-19 (Bankr. E.D.N.Y. 2010) ("If the Court determines that an adverse inference may be drawn,

the moving party must present additional evidence; it cannot rely solely on the adverse inference.")  Applying these standards, Plaintiff is not entitled to an adverse inference against Defendant on summary judgment.  Instead of seeking an adverse inference tailored to a specific fact or question, Plaintiff seeks a blanket adverse inference pertaining to all "the evidence proffered by Plaintiff." (Pl.'s Br. at 17.)  It would be inappropriate to allow Plaintiff the benefit of such an expansive adverse inference on a motion for summary judgment.  See LaSalle Bank Lake View v. Seguban, 54 F.3d 387, 391 (7th Cir. 1995) ("although inferences based on the assertion of the privilege are permissible, the entry of judgment based only on the invocation of the privilege and 'without regard to the other evidence' exceeds constitutional bounds" (quoting Baxter, 425 U.S. at 318, 96 S. Ct. at 1557–58)). An adverse inference must be tied to some specific evidence that Plaintiff was unable to discover as a result of the invocation of the privilege, and Plaintiff does not point to a single piece of evidence that he was unable to discover.  See, e.g., Kronisch v. United States, 150 F.3d 112, 126 (2d Cir. 1998) ("It is a well-established and long-standing principle of law that a party's intentional destruction of evidence relevant to proof of an issue at trial can support an inference that the evidence would have been unfavorable to the party responsible for its destruction.") Plaintiff merely claims that Lattanzi obstructed the discovery

process and made it more difficult to find the evidence necessary to support his claims.[9]  If Lattanzi or her attorney wrongfully obstructed the discovery process, then a motion for sanctions is warranted.  However, Plaintiff is not entitled to an adverse inference on summary judgment.

V.   Conversion

"'Conversion occurs when a defendant exercises unauthorized dominion over personal property in interference with a plaintiff's legal title or superior right of possession.'" LoPresti v. Terwilliger, 126 F.3d 34, 41 (2d Cir. 1997). "To maintain a claim for conversion, a plaintiff must show: (1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." Moses v. Martin, 360 F. Supp. 2d 533, 541 (S.D.N.Y. 2004) (internal quotation marks and citation omitted).  In New York, an unauthorized wire transfer from one bank account to another constitutes conversion.  Newbro v. Freed, 409 F. Supp. 2d 386,

---

[9] The Court by no means condones Lattanzi's conduct during the course of discovery--Lattanzi invoked her Fifth Amendment rights in response to numerous requests for discovery and interrogatories, yet she did not invoke the Fifth Amendment privilege during her deposition.

395-97 (S.D.N.Y. 2006), aff'd, --- Fed. App'x ----, 2007 WL 642941 (2d Cir. 2007). "[C]onversion does not require defendant's knowledge that he is acting wrongfully, but merely an intent to exercise dominion or control over property in a manner inconsistent with the rights of another." LoPresti, 126 F.3d at 42 (internal quotation marks and citation omitted). Here, although Plaintiff has presented evidence satisfying the first two elements of conversion, there remains a factual dispute about the third element--whether Lattanzi exercised unauthorized dominion over the money in question. There is no dispute that Lattanzi transferred millions of dollars from Plaintiff's account to Jaspers Inc.'s account, and then paid herself from Jaspers Inc.'s account. However, the cited evidence is insufficient to determine--as a matter of law--whether Lattanzi's actions were unauthorized. Lattanzi claims that she was compensated lavishly during her tenure at Jaspers Inc. and that all of the wire transfers she made were legitimate salary payments, salary advances, or bonus payments. While Jaspers Inc.'s records show that the payments at issue were made, Plaintiff claims he never reviewed the records. Plaintiff conversely claims that Lattanzi was a thief whose $36,000 annually salary did not increase during her eight years of employment. The parties cite to no evidence, beyond the parties' testimony, from which the Court can piece together the terms of Lattanzi's employment. These conflicting accounts of Lattanzi's compensation

package at Jaspers, Inc. therefore creates a factual dispute about Plaintiff's conversion claim.

VII. <u>Breach of Fiduciary Duty</u>

Plaintiff also argues that he should be granted summary judgment on his claim for breach of fiduciary duty. "In order to establish a breach of fiduciary duty, a plaintiff must prove the existence of a fiduciary relationship, misconduct by the defendant, and damages that were directly caused by the defendant's misconduct." <u>Kurtzman v. Bergstol</u>, 40 A.D.3d 588, 590, 835 N.Y.S.2d 644, 646 (2d Dep't 2007). "A fiduciary relationship arises between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." <u>Roni LLC v. Arfa</u>, 18 N.Y.3d 846, 848-49, 963 N.E.2d 123, 124-25, 939 N.Y.S.2d 746 (2011) (internal quotation marks and citation omitted). In other words, the relationship "exits when confidence is reposed on one side and there is resulting superiority and influence on the other." <u>AG Capital Funding Partners, L.P v. State St. Bank & Trust Co.</u>, 11 N.Y.3d 146, 158, 896 N.E.2d 61, 68, 866 N.Y.S.2d 578 (2008) (internal quotation marks and citation omitted). Determining whether a fiduciary relationship existed is a fact-specific inquiry. <u>See</u> <u>Am. Int'l Grp., Inc. v. Greenberg</u>, 23 Misc. 3d 278, 288-92, 877 N.Y.S.2d 614, 623-26 (Sup. Ct. 2008), <u>aff'd</u>, 60 A.D.3d 483, 875 N.Y.S.2d 39 (2009) ("Courts weigh the substance of the

parties' relationship, including the closeness and ongoing nature of the contacts.")

Plaintiff claims that Lattanzi owed him a fiduciary duty because she was his agent. (Pl.'s Br. at 23.) In New York, an agent indeed owes fiduciary obligations to her principal. <u>Sokoloff v. Harriman Estates Dev. Corp.</u>, 96 N.Y.2d 409, 416, 754 N.E.2d 184, 189, 729 N.Y.S.2d 425 (2001). The Court must therefore first examine whether there is sufficient evidence to determine, as a matter of law, that Lattanzi was Plaintiff's agent.

"[A]n agency relationship 'results from a manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and the consent by the other to act.'" <u>Steinbeck v. Steinbeck Heritage Found.</u>, 400 F. App'x 572, 575 (2d Cir. 2010) (quoting <u>N.Y. Marine and Gen. Ins. Co. v. Tradeline (L.L.C.)</u>, 266 F.3d 112, 122 (2d Cir. 2001)). Although the "existence of an agency relationship is a mixed question of law and fact that should generally be decided by a jury," the issue may be decided as a matter of law if there is no factual dispute concerning the nature of the parties' relationship. <u>Samba Enters. LLC v. iMesh, Inc.</u>, No. 06-CV-7660, 2009 WL 705537, at *6-8 (S.D.N.Y. March 19, 2009) (holding, as a matter of law, that an agency relationship existed when the parties entered into an explicit written agency agreement).

Evidence exists that Lattanzi acted as Plaintiff's agent while she was employed at Jaspers, Inc. It is undisputed that she had limited authority to transfer monies among Plaintiff's personal accounts. In addition, she made travel arrangements for Plaintiff's family and worked with accountants to help prepare Plaintiff's tax returns. However, the scope of Lattanzi's agency relationship with Plaintiff is vague at best. No documents exist to establish the terms of the relationship and the parties dispute the bounds of the agency--for example, Lattanzi claims she had authority to transfer monies between Plaintiff's personal account and Jaspers Inc.'s account, while Plaintiff denies she was authorized to do so. "[W]here the circumstances raise the possibility of a principal-agent relationship, and no written authority for the agency is established, questions as to the existence and scope of the agency must be submitted to a jury." Time Warner City Cable v. Adelphi Univ., 27 A.D.3d 551, 553, 813 N.Y.S.2d 114, 116 (2d Cir. 2006). Thus, whether an agency existed here presents a factual issue.

[BOTTOM OF PAGE INTENTIONALLY LEFT BLANK]

## CONCLUSION

For the forgoing reasons, both Plaintiff's motion for summary judgment (Docket Entry 57) and Defendant's motion for summary judgment (Docket Entry 58) are DENIED.


SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    August __26__, 2015
          Central Islip, NY